# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| PRIME AID PHARMACY CORP., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 4:16-cv-01237-CEJ |
| v. | ) | |
| | ) | |
| EXPRESS SCRIPTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## EXPRESS SCRIPTS, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Defendant Express Scripts, Inc. ("Express Scripts") hereby submits this response in opposition to Plaintiff Prime Aid Pharmacy Corp.'s ("Prime Aid") motion to compel (Doc. 51), stating as follows:

### INTRODUCTION

As one Court of Appeals has aptly observed, the fact that a party might have treated one contractual counterparty differently from another contractual counterparty "is no more a defense to a breach of contract than laxity in enforcing the speed limit is a defense to a speeding ticket." *Original Great Am. Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 279 (7th Cir. 1992).

The requests for production at issue on Prime Aid's motion to compel follow the same faulty logic called out above — that if Express Scripts did not terminate another pharmacy (ies) that committed the same misconduct Prime Aid did, then Express Scripts somehow had no right to terminate Prime Aid. Such facts, even if discovered, have no bearing on Prime Aid's claims. The gymnastics that Prime Aid performs, in an attempt to connect the dots between the discovery desired and the claims alleged, amount to nothing more than circular reasoning (it is relevant

because it is relevant), spiked with meaningless innuendo (Express Scripts is a Fortune 25 company that has been sued before).

Prime Aid cannot demonstrate the threshold relevance of its sought-after discovery as a matter of law.  Additionally, Prime Aid cannot demonstrate that this discovery — which would require Express Scripts to manually sift through records concerning thousands of pharmacies in its provider network dating back over five (5) years — is at all proportional to the needs of this case.  Prime Aid's motion to compel must be denied.

<u>BACKGROUND</u>

Express Scripts terminated its contractual agreement with Prime Aid due to the pharmacy's failure to report certain disciplinary action and its failure to timely reverse prescription drug claims.  *See* Doc. 33-2.  Both of these breaches gave Express Scripts the immediate right to terminate the contract.  *See id.*

Prime Aid has sought discovery seeking instances in which Express Scripts has — and has not — terminated any other pharmacy (in its retail pharmacy network consisting of approximately 70,000 pharmacies) due to similar issues:  the pharmacy's receipt of a fine/penalty by a federal or state agency and/or the pharmacy's failure to timely reverse prescription claims (causing the pharmacy to retain payments from Express Scripts for prescriptions that the pharmacy did not in fact dispense).  *See* Doc. 52-1 at Request for Production ("RFP") Nos. 7, 8, 10, and 11.  Express Scripts has objected to this discovery on the grounds that it is not relevant, that is overly broad and unduly burdensome, and that it is not proportional to the needs of this case.  *See* Doc. 52-2 at Responses to RFP Nos. 7, 8, 10, and 11.

Prime Aid contends, in its motion to compel, that the discovery it seeks is relevant to two claims in its Amended Complaint ("Complaint" (Doc. 33)):  (1) Prime Aid's claim that Express

2

Scripts breached the parties' contract by terminating Prime Aid (Count II); and (2) Prime Aid's claim that a single representation made by Express Scripts' outside counsel to Prime Aid's outside counsel, *after termination of the Agreement*,[1] regarding whether money was being withheld by Express Scripts,[2] was "fraudulent" (Count I).   According to Prime Aid, the discovery sought — documents, dating back over five (5) years,[3] regarding more than 70,000 other pharmacies in Express Scripts' retail pharmacy network — is relevant to Express Scripts' alleged "motivations and business strategy as reflected through its termination and non-termination decision-making."  Doc. 52 at 8.

The core problems with Prime Aid's relevance theory are simple and well-settled, as a matter of law.  First, issues like motive and intent are irrelevant in contract actions.  Courts have repeatedly recognized this fact.  *See infra* pp. 5-7.  Second, courts have also recognized, time and again, that dealings with nonparties are irrelevant in contract actions:  that a breach of contract claim does not justify opening the door to discovery into the alleged breaching party's dealings with others.  *See infra* pp. 7-8.

Prime Aid argues, then, that Express Scripts' dealings with tens of thousands of pharmacies are relevant to its fraudulent misrepresentation claim.  But, Prime Aid's fraudulent

---

[1] *See* Doc. 33 ¶ 3 (referring to "Express Scripts' fraudulent scheme ***following its contractual breaches***"); ¶ 10 ("***After terminating the Provider Agreement***, Express Scripts ***then embarked*** upon a fraudulent scheme . . . ."); p. 14 Heading D ("Express Scripts' Material Misrepresentations ***Subsequent to Its Breach of Contract***"); ¶ 55 ("Immediately ***subsequent to the termination*** of Prime Aid, Express Scripts ***then embarked*** on a scheme to eliminate any possibility of Prime Aid competing with Express Scripts' pharmacy Accredo.") (all emphases added).

[2] *See* Doc. 33 ¶ 72 ("There are no additional monies being withheld by Express Scripts.") (quoting Letter from Sarah C. Hellmann to Jonathan L. Swichar (Sep. 12, 2014) (attached as Exhibit I to Prime Aid's Complaint)).

[3] *See* Doc. 52-1 at Instruction No. 1 ("Unless otherwise noted, the relevant time period for these Requests is July 25, 2011 through the present (the 'relevant time period')."

misrepresentation claim is about *one statement in one letter* from Express Scripts' outside counsel to Prime Aid's outside counsel regarding the status of Prime Aid's relationship with Express Scripts. *See supra* n.2. Regardless, even if this claim were about something more, courts have been clear in holding that allegations of fraud do not make the alleged defrauder's dealings with nonparties relevant, just as in the contract context. *See infra* pp. 9-11. Prime Aid's generic appeal to "circumstantial evidence" in fraud cases does not pass muster; Prime Aid fails to establish how the discovery sought could remotely constitute "circumstantial evidence" regarding the single-statement fraudulent misrepresentation Prime Aid alleges.

In a nutshell, no matter how Prime Aid tries to spin it, Prime Aid puts forth nothing to show that its desired fishing expedition into Express Scripts' relationships with other pharmacies is at all material to Prime Aid's claims. To the contrary, the mountain of information that Prime Aid wants Express Scripts to dig up has no bearing whatsoever on the issues in this case.

## LEGAL STANDARD

The Federal Rules authorize discovery regarding any nonprivileged matter that is relevant to a party's claim or defense *and* proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). On any motion to compel, the moving party bears the initial burden of demonstrating the relevance of the information sought. *See, e.g.*, *Bell v. Lombardi*, 2015 WL 402084 (E.D. Mo. Jan. 28, 2015) (Jackson, J.); *Ariel Preferred Retail Grp., LLC. v. CWCapital Asset Mgmt.*, 2012 WL 1620506, at *3 (E.D. Mo. May 9, 2012) (citing cases). The proportionality requirement now present in Rule 26 has long been recognized by the Eighth Circuit: "Even if relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information." *Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2*, 197

4

F.3d 922, 925 (8th Cir. 1999) (quotations omitted).  Thus, in pursuing discovery, "[p]laintiffs are limited to those allegations specifically pled in the complaint.  The exploration through discovery of topics beyond those allegations is overbroad, unduly burdensome, and constitutes a fishing expedition . . . ."  *Leisman v. Archway Med., Inc.*, 2015 WL 4994084, at \*2 (E.D. Mo. Aug. 19, 2015) (citing *Heller v. HRB Tax Grp., Inc.*, 287 F.R.D. 483, 485-86 (E.D. Mo. 2012)).

<u>ARGUMENT</u>

## I.    Express Scripts' Contractual Relationships With Other Pharmacies Are Not Relevant to Prime Aid's Contract-Based Claims.

Prime Aid seeks information regarding Express Scripts' contractual relationships with other pharmacies, contending that such information will shed light on Express Scripts' motive in terminating its contractual relationship with Prime Aid.

Express Scripts' motive in terminating Prime Aid is not relevant, however, and therefore information regarding Express Scripts' contractual relationships with other pharmacies is far afield from Prime Aid's contract-based claims.  Prime Aid's focus on the implied covenant of good faith and fair dealing changes nothing.  As Prime Aid acknowledges, the implied covenant of good faith and fair dealing is, under Missouri law, simply a term implied in every contract. *See* Doc. 52 at 6; *see also CitiMortgage, Inc. v. Chicago Bancorp, Inc.*, 808 F.3d 747, 751 (8th Cir. 2015) ("Under Missouri law, . . . a covenant of good faith and fair dealing is implied in every contract . . . .") (quotations omitted).  Hence, courts' conclusions that motive is irrelevant in contract actions necessarily embrace the same fact as to the implied covenant of good faith and fair dealing.  *Cf. id*. at 751 ("[T]here can be no breach of the implied covenant where the contract expressly permits the actions being challenged, and the defendant acts in accordance with the express terms of the contract.") (quotations omitted).

As a consequence, however Prime Aid frames its argument, Prime Aid cannot escape the

5

fact that, under Missouri law, "an argument concerning the motivation of [a party] in terminating" a contract is irrelevant.  *Harris v. Desisto*, 932 S.W.2d 435, 446 (Mo. Ct. App. 1996); *see also, e.g.*, *Greentree Props., Inc. v. Kissee*, 92 S.W.3d 289, 295 n.5 (Mo. Ct. App. 2003) (stating that, if a breach "entitles the party to rescind the contract, then the motive of the party is immaterial").

On this elementary principle of contract law, Missouri is in accord with jurisdictions nationwide, recognizing that "[t]he motive for the breach commonly is immaterial in an action on the contract." *Globe Refining Co. v. Landa Cotton Oil Co.*, 190 U.S. 540, 547 (1903).  The implied covenant of good faith and fair dealing does not alter the equation:

> In the law of contracts, . . . [i]f a party has a legal right to terminate the contract . . . , its motive for exercising that right is irrelevant. . . . [Appellant] appears to think that the good-faith provision entitles it to complain about a pretextual termination even if there is good cause for termination.  This is incorrect. . . . *[T]he fact that there is a duty of good faith read into every contract does not justify judicial inquiry into motive.*

*Tuf Racing Prods, Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 589 (7th Cir. 2000) (citations omitted; emphasis added).

> *The covenant of good faith does not . . . justify an inquiry into [plaintiff's] subjective motives for terminating the contract.*  As long as a party has the legal right to terminate its obligation under the contract, it is legally irrelevant whether the party was also motivated by reasons which would not themselves constitute valid grounds for termination of the contract.

*HLT Existing Franchise Holding LLC v. Worcester Hosp. Grp. LLC*, 994 F. Supp. 2d 520, 537 (S.D.N.Y. 2014) (quotations omitted; emphasis added).

Unsurprisingly then, based on this principle, courts routinely deny motions to compel where the discovery sought pertains to a party's motive in acting on a contract, including terminating a contract.  *See, e.g.*:

- *Alt. Med. & Pharmacy, Inc. d/b/a OmniPlus Pharmacy v. Express Scripts, Inc., et al.*, Case No. 4:15-cv-01469-CDP, Doc. 97 (E.D. Mo. Sept. 22, 2015) (denying motion to

compel discovery of information regarding other pharmacies in Express Scripts' provider network alleged to be similarly situated to terminated pharmacy plaintiff: "[D]efendants' 'true motive' in breaching the contract is not relevant to plaintiff's claims.  Contrary to plaintiff's argument, this is not a discrimination case and pretext is not an element of plaintiff's case.");[4]

- *United Consumers Club, Inc. v. Prime Time Mktg. Mgmt. Inc.*, 2009 WL 3200540, at *5 (N.D. Ind. Sept. 26, 2009) (citations and quotations omitted) ("If a party has a legal right to terminate the contract[,] its motive for exercising that right is irrelevant. . . . Because Prime Time seeks proof of motive for DirectBuy's contract termination, this information is not discoverable for Prime Time's asserted purpose.");

- *Bonanno v. Quizno's Franchise Co., LLC*, 255 F.R.D. 550, 553-54 (D. Colo. 2009) (citations omitted) ("Although Plaintiffs argue that [the] information . . . is relevant to illustrating Defendants' motives and intent, Plaintiffs' claims [on the contract, under the Colorado Consumer Protection Act, and for fraudulent inducement] do not require that Plaintiffs prove Defendants' motives or intent. . . . As such, the Court finds that the information . . . has extremely questionable relevance to the claims asserted . . . .");

- *United Vaccines, Inc. v. Diamond Animal Health, Inc.*, 2006 WL 6102590, at *2 (W.D. Wisc. July 26, 2006) ("Whether there has been a breach depends on the party's statements and actions, not its motives.");

- *Sec. Ins. Co. of Hartford v. Trustmark Ins. Co.*, 2003 WL 22326574, at *2 (D. Conn. Sept. 20, 2003) ("Plaintiff's argument that the discovery sought is relevant to defendant's motive for cancelling the agreement is . . .  unavailing.").

Prime Aid does not cite a single case in which a court has granted a motion to compel under such circumstances.

In addition, courts have repeatedly recognized that, in contract-based actions, one party's dealings with third parties — so, here, Express Scripts' dealings with other pharmacies — have no bearing on the claims at issue.  *See, e.g.*:

- *Original Great Am. Chocolate Chip Cookie Co., Inc.*, 970 F.2d at 279 ("The fact that the [appellant] may, as the [appellees] argue, have treated other franchisees more leniently is no more a defense to a breach of contract than laxity in enforcing the speed limit is a defense to a speeding ticket.");

---

[4] For this Court's convenience, Judge Perry's Order in *Alt. Med. & Pharmacy, Inc. d/b/a OmniPlus Pharmacy v. Express Scripts, Inc., et al.* is attached hereto as **Exhibit A**.

- *I'mnaedaft, Ltd. v. The Intelligent Office Sys.*, 2009 WL 1537975, at *6 n.1 (D. Colo. May 29, 2009) ("Simply stated, A enters into identical contracts with B and C.  A's failure to enforce B's contractual obligations does not result in a breach of A's contract with C.  A franchisor's treatment of other franchisees has repeatedly been held to be irrelevant to a breach of contract claim brought by another franchisee.");

- *Matthews v. George Weston Bakeries Distrib., Inc.*, 2007 WL 2952155, at *4 (E.D. Mich. Oct. 9, 2007) ("Plaintiff's attempt to show a discrepancy between Defendant's treatment of his circumstance and the circumstance of other distributors (who also, allegedly, resold outdated product for which they received credit) has no relevance to assessing Plaintiff's obligations under the contract.  Plaintiff's obligations under the contract remain as the parties set them out in the contract, regardless of whether other distributors to potentially similar contracts also fell short of their obligations.");

- *Palumbo v. Shulman*, 1998 WL 436367, at *3 (S.D.N.Y. July 27, 1998) ("Defendants' dealings with their other clients, based on separately negotiated agreements to which plaintiffs were not privy, have no bearing on this lawsuit, which concerns [plaintiff's] contract with [one defendant].  Thus, the discovery sought from defendants — documents and information germane to defendants' dealings with their non-party clients — is not relevant to the subject matter of this action and need not be provided by the defendants to the plaintiffs.").

Again, Prime Aid does not cite a single case in which a court has granted a motion to compel under such circumstances.

The result in this case should be no different from the result reached in the cases above. The relevance that Prime Aid peddles has no legal basis.  To the contrary, the law is clear that inquiry into Express Scripts' relationships with other pharmacies has no bearing whatsoever on Express Scripts' right to terminate its contractual relationship with Prime Aid.  Therefore, this information has no bearing whatsoever on Prime Aid's contract-based claims in this case.

Although Prime Aid does not cite a single case in which a court has granted a motion to compel discovery of the sort that it seeks, Prime Aid relies heavily on generic principles discussed in *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908 (8th Cir. 2007), without recognizing the fundamental differences between the circumstances at issue there and here. First, *BJC Health Sys*. did not concern the termination of a contract, but rather the nature of the

defendant's performance under a complex reinsurance contract.  Second, in *BJC Health Sys.*, the defendant had "broad discretion" to calculate a condition subsequent under its reinsurance contract with plaintiffs and, therefore, complete control over whether or not this condition was triggered, allowing it to unilaterally avoid performance, regardless of plaintiffs' conduct.  478 F.3d at 914-15.  Here, Express Scripts is not alleged to have had such discretion and, in fact, it is clear from the face of Prime Aid's Complaint that Prime Aid's own actions triggered the events that underpin Prime Aid's grievances.  Third, it is equally clear from the Complaint that Prime Aid's grievances arise from the express terms of the parties' contract, and the "implied covenant . . . will not be imposed where the parties expressly address the matter in their contract." *Berringer v. JP Morgan Chase Bank, N.A.*, 16 F. Supp. 3d 1044, 1048 (E.D. Mo. 2014) (citations and quotations omitted).

Further, nothing in *BJC Health Sys.* suggests that inquiry into the defendant's potential "financial self-interest" could or should have encompassed inquiry into the defendant's relationships with other insureds with which it contracted.  478 F.3d at 915.  The question was decidedly more general:  whether reducing business in the medical malpractice arena was among the defendant's "broader business motivations and goals . . . ." *Id*.  The details of the defendant's dealings with medical malpractice insureds other than the plaintiffs were simply not at issue in *BJC Health Sys.  Id*.

In short, the law is clear:  the far-reaching discovery that Prime Aid seeks regarding Express Scripts' termination (or non-termination) of tens of thousands of other pharmacies is not relevant to Prime Aid's contract-based claims.

## II.    Express Scripts' Contractual Relationships With Other Pharmacies Are Not Relevant to Prime Aid's Fraudulent Misrepresentation Claim.

Because Prime Aid cannot establish the relevance of its contract-related requests for

SLC-8109424

production to its contract-based claims, Prime Aid tries to squeeze their relevance into Prime Aid's fraudulent misrepresentation claim.  Prime Aid's legal acrobatics miss the mark.  Prime Aid's fraudulent misrepresentation claim turns on a single alleged misrepresentation made by Express Scripts' outside counsel to Prime Aid's outside counsel, *after* Express Scripts terminated the contractual relationship, regarding monies allegedly withheld by Express Scripts.  This alleged misrepresentation is, on the face of Prime Aid's Complaint, entirely unconnected to Express Scripts' termination of its contractual relationship with Prime Aid, and it has nothing to do with Express Scripts' contractual relationships with other pharmacies whatsoever.  Simply put, nothing in the requests for production at issue is tailored to address or support Prime Aid's fraudulent misrepresentation claim.

In order to prevail on its fraudulent misrepresentation claim, Prime Aid must establish, *with respect to the lone alleged misrepresentation*, *i.e.*, with respect to the statement of Express Scripts' outside counsel:  "(1) a false, material representation, (2) the speaker's knowledge of its falsity or his ignorance of the truth, (3) the speaker's intent that the hearer act upon the representation in a manner reasonably contemplated, (4) the hearer's ignorance of the falsity of the representation, (5) the hearer's reliance on its truth, (6) the hearer's right to rely thereon, and (7) the hearer's consequent and proximately caused injury."  *Roth v. Equitable Life Assourance Soc'y of U.S.*, 210 S.W.3d 253, 258 (Mo. Ct. App. 2006).

Express Scripts' dealings with nonparties do not bear at all on these elements as to the only misrepresentation that Prime Aid has alleged.  Courts including the Eighth Circuit have held that, where one party is alleged to have defrauded another, that party's relationships with nonparties are irrelevant to the fraud directly at issue.[5]  *See, e.g.*:

---

[5] Once more, Prime Aid does not cite a single case in which a court has granted a motion to

- *Moses.com Secs., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1059-60 (8th Cir. 2005) (affirming district court's finding that discovery regarding defendant's relationships with parties similarly situated to plaintiff, and potential misrepresentations made to those parties or regarding defendant's relationships with those parties, was not relevant to plaintiff's fraudulent misrepresentation claim);

- *I'mnaedaft, Ltd.*, 2009 WL 1537975, at *5-6 (citing cases) (franchisor's relationships with other, nonparty franchisees were not relevant to plaintiff franchisee's "fraud or other tort claims against Defendants, as those claims allege conduct specifically directed by Defendants at Plaintiff, without involvement of the other franchisees").

What was true in these cases is true here:  There is simply nothing about Prime Aid's limited, single-statement, fraudulent misrepresentation claim that justifies a sweeping inquiry into Express Scripts' relationships with other pharmacies or Express Scripts' motives in conducting its relationships with those pharmacies.

## III.    The Discovery Prime Aid Seeks Is Unduly Burdensome and Not at All Proportional to the Needs of This Case.

The irrelevance of Prime Aid's sought-after discovery ends the matter.  *See Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) ("Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case.").  But even assuming tangential relevance for the sake of argument, Prime Aid has not demonstrated a need proportional to the burden the discovery at issue places on Express Scripts.  *See Misc. Docket Matter No. 1*, 197 F.3d at 925.

The requests for production at issue on Prime Aid's motion to compel would require Express Scripts to manually comb through records related to the approximately 70,000 pharmacies — with contracts that may or may not be the same as Prime Aid's contract — in

---

compel discovery, akin to that sought here, under a fraud theory.  Prime Aid merely points to the general principle that fraud can be proved by way of circumstantial evidence, without any explanation as to how the discovery sought relates, even circumstantially, to the single alleged misrepresentation in this case.

Express Scripts' provider network, as well as pharmacies no longer in its network. *See* Doc. 52-1 at Instruction No. 1 and RFP Nos. 7, 8, 10, and 11; *see also* Declaration of Urmila Paranjpe Baumann ("Baumann Decl.") ¶¶ 3, 7, and 8 Scripts does not maintain this type of information — information regarding whether network pharmacies (a) delayed reversing submitted claims or (b) paid fines/penalties to federal or state agencies as a consequence of investigations by such agencies — in a single, centralized location, such as an electronic database. *See* Baumann Decl. ¶¶ 5-6. As a result, in order to respond to Prime Aid's requests, Express Scripts would be required to conduct a manual review of information regarding every pharmacy in its network, or formerly in its network dating back to July 25, 2011, in order to determine whether the circumstances identified by Prime Aid apply (or applied) to that pharmacy. *See id.* ¶¶ 7-8. And Express Scripts would then have to conduct a "second-level" manual review to determine whether any such pharmacy was or was not terminated, or whether some other course of action was taken by Express Scripts with respect to each such pharmacy. *See id.*

Prime Aid claims this discovery is *per se* not unduly burdensome because (a) Express Scripts' pharmacy network "recently has been the subject of litigation and investigation" and (b) Express Scripts is a Fortune 25 company. Doc. 52 at 9. In other words, following Prime Aid's logic, no company that is (a) engaged in litigation and/or (b) surviving in today's market could ever plausibly argue that discovery is unduly burdensome and/or disproportionate to the needs of a case. This is plainly not the law. Discovery like that sought by Prime Aid is often found to be disproportionate to the needs of a single plaintiff's individual claims. *See, e.g.*:

- *CitiMortgage, Inc. v. Just Mortgage, Inc.*, 2011 WL 1626584 (E.D. Mo. Apr. 28, 2011) (citing *inter alia BJC Health Sys.*, 478 F.3d at 914) (party to loan purchase agreement could not use the implied covenant of good faith and fair dealing as a basis to seek discovery beyond the loans purchased pursuant to the litigants' agreement: "[D]efendant's blanket requests for documents and memoranda regarding loan transactions between plaintiff and third parties and information presented to third parties

regarding classes of loans are not sufficiently relevant to demand the resulting burdensome production. ***A party cannot, by virtue of raising a defense of bad faith, seek limitless discovery through which it hopes to unearth supporting evidence***.") (emphasis added);

- *Robinson v. Folino*, 2016 WL 4678340, at *2 (W.D. Pa. Sept. 7, 2016) (searching defendants' records to determine every inmate who had filed a grievance against a particular correctional officer "would be overbroad, unduly burdensome and disproportionate to the needs of this case");

- *Harper v. Unum Grp.*, 2016 WL 4508238, at *3 (W.D. Ark. Aug. 29, 2016) (plaintiff's request for all documents, over a three year period, concerning coverage determinations similar to those made with respect to the plaintiff, was not proportionate to the needs of the case).

In substance, Prime Aid seeks much the same, here, as was sought in *CitiMortgage*, *Robinson*, and *Harper*. Based solely on claims for breach of contract and fraudulent misrepresentation, and an asserted theory about Express Scripts' motive in terminating a single pharmacy, Prime Aid asks this Court to force Express Scripts to manually sift through the history of its relationships with tens of thousands of pharmacies, over more than five (5) years, is somehow proportionate to that supposed need. But Prime Aid has failed to demonstrate that such information is relevant, in the first instance; and, even if Prime Aid could show tangential relevance, the information sought is decidedly asymmetrical to the needs of this case.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Express Scripts respectfully requests that this Court deny Prime Aid's motion to compel in its entirety, and grant Express Scripts such other and further relief as this Court deems appropriate under the circumstances.

Date:  December 15, 2016                    Respectfully submitted,


                                            **HUSCH BLACKWELL LLP**


                                            By:    */s/* Sarah C. Hellmann
                                                   Sarah C. Hellmann, #50373MO
                                                   Kyle P. Seelbach, #60382MO
                                                   190 Carondelet Plaza, Suite 600
                                                   St. Louis, MO  63105
                                                   P: (314) 480-1500
                                                   F: (314) 480-1505
                                                   sarah.hellmann@huschblackwell.com
                                                   kyle.seelbach@huschblackwell.com

                                            *Attorneys for Defendant Express Scripts,*
                                            *Inc.*

14

**<u>Certificate of Service</u>**

The undersigned hereby certifies that on this 15th day of December, 2016 a copy of the foregoing document was filed with the Clerk of the Court to be served upon counsel of record via the Court's ECF system.


*/s/* Sarah C. Hellmann
_____
