UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PRIME AID PHARMACY CORP., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:16-CV-1237 (CEJ) |
| | ) |
| EXPRESS SCRIPTS, INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on plaintiff's motion to compel defendant's responses to requests for production of documents. Defendant has filed a response in opposition and the issues are fully briefed. Defendant has also filed a motion for a hearing.

**I. Background**

Plaintiff Prime Aid Pharmacy Corp. is a licensed pharmacy providing retail and specialty medications. On June 25, 2011, plaintiff signed a provider agreement with defendant Express Scripts, Inc. On August 22, 2014, defendant terminated the provider agreement based on plaintiff's handling of seven reimbursement claims when patients did not timely pickup medications and a $750 fine plaintiff paid to the New Jersey Pharmacy in 2012.[1] Plaintiff alleges that these reasons are a pretext for defendant's real motivation, which was to eliminate plaintiff as a competitor to its own specialty pharmacy, Accredo. As support, plaintiff alleges that defendant

---

[1] Defendant also cited an alleged discrepancy between plaintiff's reimbursement requests for syringe kits and the actual kits plaintiff dispensed. This issue is not relevant to the parties' discovery dispute.

has not taken action against Accredo for more egregious conduct. For example, plaintiff alleges that Accredo paid $54 million to the Department of Justice to settle allegations that it violated the False Claims Act and the Anti-Kickback Act. [Doc. # 33 at ¶¶ 44(a), 51]; see also ¶52 (alleging that defendant's wholly-owned subsidiary Medco Health Systems, Inc., paid over $100 million in fines to settle allegations of criminal conduct). Plaintiff asserts claims for fraudulent misrepresentation (Count I); breach of contract (Count II); breach of covenant of good faith and fair dealing (Count III); violation of the Missouri Prompt Pay Act (Count IV); unjust enrichment (Count V); promissory estoppel (Count VI); and equitable accounting (Count VII).

On October 10, 2016, plaintiff served its first requests for production of documents. Requests 7 and 8 seek:

> 7. All documents related to terminations from the Express Scripts Network by Express Scripts of pharmacies, other than Prime Aid, based upon alleged delays in reversing submitted claims.
>
> 8. All documents related to decisions not to terminate pharmacies, other than Prime Aid (including, but not limited to, Accredo), from the Express Scripts Network, based upon alleged delays in reversing submitted claims.
>
> Requests 10 and 11 seek:
>
> 10. All documents related to terminations from the Express Scripts Network by Express Scripts of pharmacies, other than Prime Aid, based upon payments made to State Boards of Pharmacies or Federal or State Attorneys General in response to State Boards of Pharmacy audits.
>
> 11. All documents related to decisions not to terminate pharmacies, other than Prime Aid (including, but not limited to, Accredo), from the Express Scripts Network, based upon payments made to State Boards of Pharmacies, or Federal or State Attorneys General in response to State Boards of Pharmacy audits.

[Doc. # 52-1 at p. 9]. The time period for these requests is July 25, 2011 through the present. [Doc. # 52-1 at p. 5].

Defendant objects to these requests on the grounds that they are irrelevant, overly burdensome, and not proportionate to the needs of the case. [Doc. # 52-2 at pp. 6-8].

## II. Discussion

Under Federal Rule of Civil Procedure 26(b)(1), litigants may obtain

> discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Id. Relevancy in this context "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Jo Ann Howard & Assocs., P.C. v. Cassity, 303 F.R.D. 539, 542 (E.D. Mo. 2014) (citation and quotation omitted). After the proponent of discovery makes a threshold showing of relevance, the party opposing a motion to compel has the burden of showing its objections are valid by providing specific explanations or factual support as to how each discovery request is improper. Id. (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1993), and St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp., 198 F.R.D. 508, 511–12 (N.D. Iowa 2000)). The party must demonstrate to the court "that the requested documents either do not come within the broad scope of relevance defined pursuant to Rule 26(b)(1) or else

3

are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." Id. (quoting Burke v. New York City Police Department, 115 F.R.D. 220, 224 (S.D.N.Y. 1987)).

### A. Relevance

Plaintiff seeks documents relating to defendant's "decision-making regarding the termination and non-termination of network pharmacies, including its own captive, Accredo" because such documents are likely to show that defendant subjected plaintiff to more stringent performance standards than those imposed on less competitive pharmacies, including Accredo. According to plaintiff, evidence of "disparate treatment" raises the inference of fraud and unfair dealing and is relevant to its claims for fraudulent misrepresentation and breach of the implied contract of good faith and fair dealing. [Doc. # 52 at pp. 1-2].

Plaintiff relies on BJC Health Sys. v. Columbia Cas.Co., 478 F.3d 908 (8th Cir. 2007) to support its contention that the documents it seeks are relevant. In BJC Health, the parties entered into a three-year contract, under which the defendant agreed to provide medical malpractice insurance to the plaintiff for a fixed yearly premium. Defendant's obligation to provide ongoing coverage was conditional upon the "incurred loss ratio" — which the defendant had the right to determine — remaining below a fixed percentage. Id. at 911, 914. Shortly before the start of the third year of the contract, the defendant notified the plaintiff that it had determined that the incurred loss ratio had exceeded the contractual limit and that it would not provide reinsurance at the agreed upon premium. Id. at 911. Plaintiff brought a breach of contract claim, arguing in part that the insurer had acted in bad faith in determining the incurred loss ratio. At trial, the Court excluded evidence pertaining

4

to defendant's financial and human resources practices, including testimony suggesting that defendant "sought to shed or increase premiums for medical malpractice insurance clients." Id. at 913.

On appeal, the Eighth Circuit noted that the defendant's latitude in determining the incurred loss ratio was constrained by the covenant of good faith and fair dealing. Id. at 914. To make out its claim, plaintiff was required to show that defendant's "determination of incurred loss was directed toward evading the spirit of the contract or denying [plaintiff] the benefit of the bargain." Id. Because defendant's "broader business motivations and goals" bear on the purposes for which it employed its discretion, "evidence that [defendant] was seeking to shed medical malpractice clients like [plaintiff] was relevant to the question of good faith . . . and thus is relevant to the question whether the contract was breached." Id. at 915. Here, defendant claimed it had the right to immediately terminated the provider agreement with plaintiff, based on plaintiff's actions. Plaintiff alleges that defendant used pretexts to terminate its agreement with the goal of eliminating plaintiff as a competitor and shifting its business to its own pharmacy, Accredo. Plaintiff theorizes that defendant engaged in a pattern of pretextual terminations of pharmacies. The Court finds that BJC Health is squarely on point and, further, that plaintiff has made the requisite threshold showing of relevance.

The Court briefly addresses defendant's assertions that BJC Health does not apply to the facts here. First, defendant asserts that BJC Health did not involve the termination of a contract. As set forth above, the defendant exercised its contractual right to refuse to continue performance under the contract, effectively terminating the contract. Second, defendant argues that in BJC Health the

5

defendant had broad discretion to calculate the incurred loss ratio and had "complete control" over whether the condition for termination was triggered, regardless of plaintiff's conduct. Defendant argues that it is clear from the complaint that plaintiff's own actions triggered the termination. Of course, that is a factual determination that has not yet been made. Finally, defendant argues that plaintiff's grievances arise from the express terms of the contract and that implied covenants "will not be imposed where the parties expressly address the matter in their contract." [Doc. # 55 at p. 9 (quoting Berringer v. JP Morgan Chase Bank, NA, 16 F. Supp. 3d 1044, 1048 (E.D. Mo. 2014). Defendant has not moved to dismiss plaintiff's implied-covenant claim on the argument it presents here and thus it is not a basis for resisting the discovery plaintiff seeks.

Defendant argues that, under Missouri law, evidence of its motive for terminating the contract is irrelevant, citing CitiMortgage, Inc. v. Chicago Bancorp, Inc., 808 F.3d 747 (8th Cir. 2015), in support. In this case, the parties entered into a contract pursuant to which plaintiff agreed to buy residential mortgage loans underwritten by defendant. The contract required defendant to repurchase or cure any loans that plaintiff determined in its sole discretion did not conform to the terms of the parties' agreement. Plaintiff brought suit for breach of contract after defendant refused to repurchase or cure loans that plaintiff determined were nonconforming. The district court granted summary judgment to plaintiff on its breach of contract claim. The Eighth Circuit affirmed, rejecting defendant's argument that there were genuine issues of material fact regarding the plaintiff's "good faith in determining the materiality" of the alleged deficiencies in the challenged loans. Id. at 750. In language that defendant does not cite, the Eighth

6

Circuit stated that even if the plaintiff "erroneously exercised its 'sole and exclusive discretion' under the contract," the defendant did not provide evidence to establish that the plaintiff "acted in bad faith." Id. at 752 (quoting BJC Health Sys., 478 F.3d at 914). CitiMortgage does not support defendant's argument that the evidence plaintiff seeks is irrelevant. Defendant's reliance on Alternative Med. & Pharm., Inc. v. Express Scripts, Inc., No. 14-CV-1469 CDP (E.D. Mo. Sept. 22, 2015), for the proposition that motive is irrelevant similarly fails as the plaintiff there did not bring a claim for breach of the implied covenant of good faith and fair dealing.

Defendant also argues that its contractual relationships with other pharmacies are not relevant to plaintiff's claims. Defendant cites Original Great Am. Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd., 970 F.2d 273, 279 (7th Cir. 1992), in which the court states that "the fact that the Cookie Company may . . . have treated other franchisees more leniently is no more a defense to a breach of contract than laxity in enforcing the speed limit is a defense to a speeding ticket." This statement was made in the context of a determination by the district court that the defendant franchisee committed numerous and nontrivial violations of the contract. See id. at 280. The appellate court went on to note that these violations also precluded the defendant from arguing that the plaintiff had not acted in good faith. Id. Here, there has been no finding as of yet that plaintiff committed serious violations of the provider agreement and the question of defendant's good faith is very much at issue. In I'mnaedaft, Ltd. v. The Intelligent Office Sys., No. 08-CV-1804 LTB/KLM, 2009 WL 1537975, at *6 (D. Colo. May 29, 2009), also cited by defendant, the court granted the motion of third-party franchisees to quash plaintiff's subpoenas, stating in language that defendant again relies on, "Simply

7

stated, A enters into identical contracts with B and C. A's failure to enforce B's contractual obligations does not result in a breach of A's contract with C. A franchisor's treatment of other franchisees has repeatedly been held to be irrelevant to a breach of contract claim brought by another franchisee." Id. at *6 n.1. In language the defendant does not cite, however, the court ordered the defendant to respond to written discovery requests regarding "its dealings and communications with other franchisees," which plaintiff contended was "relevant to its fraud, fraudulent inducement and preferential treatment/breach of contract claims." Id. at *7. In Palumbo v. Shulman, No. 97-CIV-4314(JGK)(KNF), 1998 WL 436367, at *3 (S.D.N.Y. July 27, 1998), the court held that the defendants' "dealings with their other clients, based on separately negotiated agreements to which plaintiffs were not privy," were not relevant to the plaintiffs' claims. However, there was no claim in that case that defendant violated the implied covenant of good faith and thus it is not applicable. The Court has reviewed the remainder of the cases cited by defendant and concludes that they similarly fail to support its argument.

### B. Undue Burden and Proportionality

Defendant asserts that the requested discovery is burdensome and not proportional to the needs of the case. "Rule 26 was amended in 2015 to include the 'proportionality' requirement." State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C., 315 F.R.D. 220, 222 (E.D. Mich. 2016) (citation omitted). "However, the 2015 amendments do not alter the basic tenet that Rule 26 is to be liberally construed to permit broad discovery." Id. Furthermore, the amendment "does not place on the party seeking discovery the burden of

addressing all proportionality concerns. Nor is the change intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional." Fed.R.Civ.P. 26(b) advisory committee's note to 2015 amendment. The "party claiming undue burden or expense ordinarily has far better information . . . with respect to that part of the determination." Id.

Defendant submits the declaration of assistant general counsel Urmila Paranjpe Baumann, who contends that (1) the documents plaintiff seeks "are not the kind of documents" defendant maintains in a single centralized database, but are "maintained separately by pharmacy;" and (2) responding to plaintiff's requests would require it to manually review information regarding 70,000 pharmacies (plus an unspecified number of terminated pharmacies) within multiple departments throughout the corporation. [Doc. # 56].

"[T]he presumption is that the responding party must bear the expense of complying with discovery requests." Webb v. Ethicon Endo-Surgery, Inc., No. 13-cv-1947 (JRT/JJK), 2015 WL 317215, at *7 (D. Minn. Jan. 26, 2015) (quotations and citations omitted). And, "[t]he fact that a corporation has an unwieldy record keeping system which requires it to incur heavy expenditures of time and effort to produce requested documents is an insufficient reason to prevent disclosure of otherwise discoverable information." Id. "A discoveree cannot avoid a proper discovery request by utilizing record keeping which conceals rather than discloses." McAllister-Lewis v. Goodyear Dunlop Tires N. Am., Ltd., No. 4:14-CV-04103-LLP, 2015 WL 4886539, at *14 (D.S.D. Aug. 17, 2015), supplemented, No. 4:14-CV-04103-LLP, 2015 WL 5794697 (D.S.D. Oct. 1, 2015) (citation omitted). Here, defendant's argument that plaintiff's requests are burdensome amounts to an

9

assertion that it does not maintain its records in a searchable format. This is not adequate to establish that plaintiff's requests will impose an undue burden.

Defendant also fails to support its contention that plaintiff's requests are disproportionate. The factors for determining whether requested information is proportional to the needs of the case include: the importance of the issues, the amount in controversy, the parties' relative access to the information and their resources, the importance of the discovery in resolving the issues, and whether the burden or expense of producing the discovery outweighs its likely benefit. Fed.R.Civ.P. 26(b)(1). See Duhigg v. Indus., No. 8:15CV91, 2016 WL 4991480, at *3 (D. Neb. Sept. 16, 2016) (in opposition to plaintiff's motion to compel, defendant provided information regarding the hours and expense of reviewing responsive documents). Defendant makes no attempt to address these factors, relying instead on its assertion that the information plaintiff seeks is irrelevant. Again, this is not adequate to establish that plaintiff's document requests are disproportionate to the needs of the case.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to compel responses to document requests 7-8 and 10-11 [Doc. # 51] is **granted**.

**IT IS FURTHER ORDERED** that defendant shall produce all documents responsive to plaintiff's requests for production not later than **January 31, 2017**.

**IT IS FURTHER ORDERED** that defendant's motion for a hearing [Doc. # 57] is **denied as moot**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 6th day of January, 2017.