UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

PRIME AID PHARMACY CORP., )
)
      Plaintiff, )
)
  vs. ) Case No. 4:16-CV-1237 (CEJ)
)
EXPRESS SCRIPTS, INC., )
)
      Defendant. )

## **MEMORANDUM AND ORDER**

This matter is before the Court on plaintiff's motion to dismiss defendant's counterclaims, pursuant to Fed.R.Civ.P. 12(b)(6). Defendant has filed a response in opposition and the issues are fully briefed.

**I.    Background**

Plaintiff Prime Aid Pharmacy Corp. (Prime Aid) is a licensed pharmacy located in New Jersey that provides retail and specialty medications. Defendant Express Scripts, Inc., (ESI) is a pharmacy benefits manager that contracts with insurers and health plan administrators to facilitate the delivery of prescription drugs to health plan members. On June 25, 2011,[1] the parties executed the provider agreement that is the subject of this dispute.[2] The agreement had an initial term of three years, after which it was automatically renewed for successive one-year terms unless either party provided written notice of its intent not to renew. First Am. Counterclaim at ¶ 19 [Doc. # 85].

---

[1] According to ESI's answer, Prime Aid became a participant in in ESI's pharmacy network in 2007. Answer at ¶ 7 [Doc. # 75].
[2] For a discussion of Prime Aid's allegations and claims, see the Memorandum and Order entered on January 18, 2017. [Doc. # 60 (denying ESI's motion to dismiss three counts)].

In its amended counterclaims, ESI alleges that Prime Aid failed to timely reverse claims for reimbursement when prescriptions were not delivered to patients. According to the counterclaim, after filling a prescription, Prime Aid submitted an electronic claim for reimbursement. Within seconds, ESI responded with a message stating whether the submitted claim was approved and setting forth the amount of the copayment that Prime Aid was required to collect from the member. If the prescription was not picked up within ten days after Prime Aid submitted the claim, Prime Aid had an additional three days to reverse the claim. Every two weeks, ESI paid Prime Aid and provided a statement that identified the prescription number, the date of service, the drug, and the amount paid for each claim. Id. at ¶¶ 27, 39-41.

ESI alleges that, in 2014, Prime Aid's claims submissions began to display unusual patterns.[3] Id. at ¶ 43. After investigating, ESI determined that Prime Aid submitted claims for seven prescriptions that were never provided to the ESI member.[4] Id. at ¶¶ 49-72. For example, in May 2014, Prime Aid submitted a claim for prescription # 687335 for ESI member SK. Two weeks later, ESI paid Prime Aid $1,132.17 for this claim. In June 2014, Prime Aid submitted a claim for refilling the prescription, which ESI again paid. On July 21, 2014, SK's health plan contacted Prime Aid after it submitted a claim for another refill. At that point, Prime Aid acknowledged that the prescriptions had never been dispensed and, on July 22,

---

[3] In support of this assertion, ESI states that, starting in 2014, the average price of claims submitted by Prime Aid rose by more than 600%. Id. at ¶ 43. ESI does not allege that this price increase was the product of fraud or misconduct by Prime Aid.
[4] ESI distinguishes between two types of fraudulent schemes perpetrated by pharmacies. In one, the pharmacy submits fictitious claims where there was no prescription. ESI does not allege that Prime Aid engaged in this type of scheme. Rather, ESI alleges that Prime Aid submitted claims on valid prescriptions but, in some instances, failed to reverse the claim in a timely fashion when the medication was not picked up. Id. at ¶ 45.

2

2014, it reversed the three claims for prescription # 687335. Id. at ¶ 50. Similarly, in June 2014, Prime Aid submitted claims for prescriptions # 704126 and # 704127 for ESI member JM. ESI timely paid Prime Aid $46,692.30 for the two claims. In July 2014, Prime Aid submitted claims for refilling the prescriptions, which ESI again timely paid. Once again, the medications were not actually dispensed to the patient. After ESI asked for confirmation that the prescriptions were delivered, Prime Aid reversed the claims.[5] Id. at ¶ 70. On August 22, 2014, ESI terminated Prime Aid from the network, citing violations of the provider agreement, including its failure to timely reverse the seven reimbursement claims detailed in the counterclaim.

ESI asserts counterclaims for fraudulent inducement, breach of contract, and unjust enrichment, based on allegations that Prime Aid accepted payment for prescriptions that were not actually dispensed to patients. Prime Aid moves to dismiss all three counterclaims for failure to state a claim upon which relief can be granted.

## II. Legal Standard

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6). The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) (citing Swierkiewicz v. Sorema N.A., 534 U.S.

---

[5] ESI cites other examples of what it deems to be suspect behavior by Prime Aid: on July 29, 2014, ESI informed Prime Aid that it had been selected for an investigative review and asked Prime Aid to validate 20 prescriptions. Id. at ¶ 60. In response, Prime Aid reversed claims it had submitted for four of the prescriptions. Id. at ¶ 61. On its final day as a network provider, Prime Aid submitted 402 claims for payment, including 112 for new patients. Id. at ¶¶ 75-76.

3

506, 508 n.1 (2002)); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (stating that a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. Scheuer, 416 U.S. at 236. A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see id. at 563 (stating that the "no set of facts" language in Conley v. Gibson, 355 U.S. 41, 45–46 (1957), "has earned its retirement"); see also Ashcroft v. Iqbal, 556 U.S. 662, 678–84 (2009) (holding that the pleading standard set forth in Twombly applies to all civil actions). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

ESI's fraudulent inducement counterclaim is also subject to the requirements of Rule 9(b), which requires that a party alleging fraud "must state with particularity the circumstances constituting the fraud . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The Eighth Circuit has held that the requirements of Rule 9(b) must be interpreted

> in harmony with the principles of notice pleading. The special nature of fraud does not necessitate anything other than notice of the claim; it simply necessitates a higher degree of notice, enabling the defendant to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct. Thus, a plaintiff must specifically allege the circumstances constituting fraud, including such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.

Abels v. Farmers Commodities Corp., 259 F.3d 910, 920 (8th Cir. 2001) (quotations and citations omitted). "In other words, Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story." Summerhill v. Terminix, Inc., 637 F.3d 877, 880 (8th Cir. 2011). However, "[s]cienter . . . may be pleaded in conclusory fashion with the caveat that the party pleading fraud must set forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading." Nuss v. Cent. Iowa Binding Corp., 284 F. Supp. 2d 1187, 1194 (S.D. Iowa 2003) (citations omitted).

### III. Discussion

#### A. Count I — Fraudulent inducement

Prime Aid argues that the fraudulent inducement counterclaim must be dismissed because ESI has failed to plead that it acted with the requisite intent. Prime Aid additionally argues that the claim is barred by the economic loss doctrine.

To state a claim for fraudulent inducement under Missouri law, ESI must make factual allegations to support the following elements:

> (1) a false material representation; (2) the speaker's knowledge of its falsity or his ignorance of its truth; (3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated; (4) the hearer's ignorance of the falsity of the statement; (5) the hearer's reliance on its truth, and the right to rely thereon; and (6) proximate injury.

Snelling v. HSBC Card Servs., Inc., No. 4:14 CV 431 CDP, 2015 WL 3621091, at *5 (E.D. Mo. June 9, 2015) (addressing claims for fraudulent inducement to continue contract and concealment of material fact) (quoting Koger v. Hartford Life Ins. Co., 28 S.W.3d 405, 411 (Mo. Ct. App. 2000)).

5

As relevant here, ESI alleges that: (1) by submitting electronic claims, Prime Aid represented that it dispensed medications to a member; (2) with respect to the seven prescriptions detailed in the counterclaim, the representations were false because Prime Aid did not dispense the medications to an ESI member; and (3) "Prime Aid knew these representations were false at the time they were made or, at a minimum, recklessly disregarded whether or not they were true at the time they were made."[6] First Am. Counterclaim at ¶ 80. ESI also alleges that, as a result of Prime Aid's misrepresentations, ESI was fraudulently induced to not terminate the provider agreement and to renew it for a one-year period. ESI claims that it was damaged because it paid for claims that Prime Aid was able to submit solely by virtue of the contract with ESI. ESI also claims it incurred costs to investigate Prime Aid. Id. at ¶ 87. Prime Aid argues that ESI cannot establish that it acted with the requisite intent — that is, that Prime Aid knowingly or recklessly submitted false claims for reimbursement.

A fraud claim requires proof that the speaker knew the misrepresentation was false at the time it was made. Kempton v. Dugan, 224 S.W.3d 83, 88 (Mo. Ct. App. 2007) (reversing judgment on fraud claim where "[a]ll of the allegations relate to actions or statements that occurred *after* the [allegedly fraudulent] original trust agreements were executed") (emphasis in original). When an existing fact is misrepresented, "it is not necessary that it be shown that defendant had actual knowledge of the falsity of the facts stated by him" but rather "[i]t is sufficient that he made the representations with the consciousness that he was without knowledge

---

[6] ESI further alleges that the representations were material, that ESI was ignorant of the falsity of the representations, that Prime Aid intended that ESI would rely on the representations, and that ESI reasonably relied on them. Id.

6

as to their truth or falsity, when, in fact, they were false." Stevens v. Markirk Constr., Inc., 454 S.W.3d 875, 881 (Mo. 2015), reh'g denied (Mar. 31, 2015) (quoting Wilson v. Murch, 354 S.W.2d 332, 338–39 (Mo. Ct. App. 1962)). When the misrepresentation concerns a statement of intent as to future performance or events, the plaintiff must establish that at the time the statement was made the speaker did not intend to perform the act represented. Id.

ESI alleges that Prime Aid submitted false reimbursement claims. However, ESI's claims procedure allowed Prime Aid to submit reimbursement claims when it first filled prescriptions. Prime Aid thus could not know when it filled the prescription and submitted a claim whether the prescription was actually going to be picked up. Under this scenario, ESI must allege something more than the fact that Prime Aid submitted claims for prescriptions that were not picked up. ESI cites its allegation that Prime Aid "knew . . . or recklessly disregarded" whether its claims were valid when it submitted them. First Am. Counterclaim at ¶ 80(c). Although scienter may be pleaded in conclusory fashion, ESI "must set forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading." Nuss, 284 F. Supp. 2d at 1194; see also Iqbal, 556 U.S. at 678 (plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). These "bare assertions . . . amount to nothing more than a 'formulaic recitation of the elements' . . . [and a]s such, the allegations are conclusory and not entitled to be assumed true. Id. at 681 (quoting Twombly, 550 U.S. at 554–55). ESI's allegation that the seven identified prescriptions are merely examples of a systematic pattern of fraud is similarly unsupported by any factual allegations.

7

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not shown — that the pleader is entitled to relief." Id. at 679.

ESI cites Prime Aid's pattern of reversing claims after it was asked to validate them as evidence of "a pattern of concealment that is more than suggestive of fraudulent intent." [Doc. # 96 at 8]. ESI is correct that a pattern of knowing concealment can support an inference of fraudulent intent. See Seda v. Dep't of the Army, 505 F. App'x 940, 943 (Fed. Cir. 2013) (intent to deceive could be inferred from omission of prior employment and termination in resumes). Again, however, there is no basis from which to infer that Prime Aid knew that any specific prescription would not be picked up when it submitted claims. And, the fact that Prime Aid failed to reverse claims, without more, suggests no more than negligence on its part.

The four refills for which Prime Aid submitted claims after the initial prescriptions were not picked up provide the strongest support for ESI's claim that Prime Aid acted with fraudulent intent. Even here, however, the Court concludes that ESI has not adequately pleaded "specific facts that make it reasonable to believe that [Prime Aid knew its claims for refills were] materially false or misleading." Nuss, 284 F. Supp. 2d at 1194. As ESI acknowledges, Prime Aid "submitted tens of thousands of prescriptions for payment" between 2007 and 2014. Answer at ¶ 7 [Doc. # 75]. Against that volume of claims activity, four improperly submitted claims for refills simply do not support an inference that Prime Aid knew in these instances that it was submitting invalid claims. ESI fails to allege that Prime Aid intentionally made false representations when it submitted

8

reimbursement claims for medications that were not subsequently picked up by the ESI member.

In addition, ESI's fraudulent inducement counterclaim is barred by the economic loss doctrine. "The economic loss doctrine bars recovery of purely pecuniary losses in tort where the injury results from a breach of a contractual duty." Compass Bank v. Eager Rd. Assocs., LLC, 922 F. Supp. 2d 818, 827 (E.D. Mo. 2013) (quoting Dubinsky v. Mermart, LLC, 595 F.3d 812, 819 (8th Cir. 2010) (internal quotation and citation omitted)). The doctrine exists to protect the integrity of the bargaining process, through which the parties have allocated the costs and risks.[7] Web Innovations & Tech. Servs., Inc. v. Bridges to Digital Excellence, Inc., 69 F. Supp. 3d 928, 932 (E.D. Mo. 2014) (citing Marvin Lumber & Cedar Co. v. PPG Indus., Inc., 223 F.3d 873, 882 (8th Cir. 2000)).

Two key factors in examining whether a fraud claim is independent of a contract claim under the economic loss doctrine are: (1) whether the subject matter of the alleged misrepresentations was incorporated into the parties' contract and (2) whether the plaintiff suffered additional damages outside the contract as a result of the alleged fraud. Nestlé Purina Petcare Co. v. Blue Buffalo Co. Ltd., 181 F. Supp. 3d 618, 638 (E.D. Mo. 2016) (citing Compass Bank, 922 F. Supp. 2d at 827 and Trademark Med., LLC v. Birchwood Labs., Inc., 22 F. Supp. 3d 998, 1003 (E.D. Mo. 2014)). The second factor is dispositive in this instance.

---

[7] Courts have recognized specific exceptions to the economic loss doctrine in cases involving a fiduciary relationship or negligence in providing professional services or where the defendant breached a public duty. Id. at 932-33 (citing Bruce Martin Constr., Inc. v. CTB, Inc., No. 1:10CV205 SNLJ, 2012 WL 718624, at *3 (E.D. Mo. Mar. 6, 2012); Dannix Painting, LLC v. Sherwin–Williams Co., No. 4:12CV01640 CDP, 2012 WL 6013217, at *2 (E.D. Mo. Dec. 3, 2012)). These exceptions do not apply here.

ESI asserts that it was fraudulently induced to remain in the contract. It claims that it was damaged by having to pay claims that Prime Aid was able to submit solely because it had a contract with ESI. First Am. Counterclaim at ¶ 87. However, ESI does not allege that its members would not have gone to another pharmacy to fill their prescriptions or that it cost more to reimburse Prime Aid than another pharmacy. Furthermore, ESI does not explain how it was damaged by paying Prime Aid for prescriptions that were actually picked up by ESI's members. ESI also claims that it was damaged to the extent that it incurred costs in investigating Prime Aid. Id. Because the contract allows ESI to recover such costs from Prime Aid, investigation costs are not additional damages outside the contract. See Provider Agreement § 4.2.b [Doc. # 35 at 13].

ESI's counterclaim for fraudulent inducement is barred by the economic loss doctrine.

### B.   Count II — Breach of Contract

A breach of contract claim has the following essential elements: (1) the existence and terms of a contract; (2) plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff. Keveney v. Missouri Military Acad., 304 S.W.3d 98, 104 (Mo. 2010). Prime Aid argues that ESI has not adequately pleaded that it was damaged by Prime Aid's alleged breach of the provider agreement.

ESI alleges that, in 2014, Prime Aid untimely reversed over 1,800 claims.[8] First Am. Counterclaim at ¶ 95. ESI asserts that each untimely reversal is a breach of the agreement. In addition, ESI alleges that Prime Aid failed to collect required

---

[8] ESI further alleges that after it terminated the provider agreement, Prime Aid untimely reversed an additional 115 claims. Id. at 96.

copayments. Id. at ¶ 97. Finally, ESI alleges that Prime Aid failed to maintain required records demonstrating that medications were actually dispensed to members. Id. at 98; see also Provider Agreement at § 2.16 (addressing records requirements) [Doc. # 35 at 10]. ESI seeks damages for monies paid to Prime Aid for claims where the prescriptions were not dispensed or where Prime Aid was not entitled to payment. First Am. Counterclaim at ¶ 101.

Prime Aid argues that ESI's breach of contract claim cannot succeed because it fails to allege it sustained any damages. "[F]ederal pleading standards require more than 'an unadorned, the defendant-unlawfully-harmed-me accusation.'" Bank of Am., N.A. v. Corporex Realty & Inv., LLC, 875 F. Supp. 2d 689, 704 (E.D. Ky. 2012) (quoting Iqbal, 556 U.S. at 678) (dismissing counterclaim for breach of contract because defendant did not identify how it was damaged by the alleged breach); see also Desio v. Russell Rd. Food & Beverage, LLC, No. 2:15-CV-1440 GMN/CWH, 2016 WL 4721099, at *4 (D. Nev. Sept. 9, 2016) (dismissing counterclaim for breach of contract because damage allegation was conclusory); Dyer v. Nw. Airlines Corps., 334 F. Supp. 2d 1196, 1200 (D.N.D. 2004) (dismissing contract claim where plaintiffs "failed to allege any facts relating to the breach of contract claim which support the conclusory statements they have suffered damages").

The parties' agreement gave ESI the right to terminate the agreement if Prime Aid failed to follow the appropriate claims procedures. See Provider Agreement § 4.2.c (permitting immediate termination in the event that the pharmacy "routinely . . . fails to comply with [ESI's] policies and procedures) [Doc. # 35 at 13]. ESI invoked the termination provision in August 2014 based, in part,

11

on the seven prescriptions detailed in the counterclaim. See Aug. 8, 2014 termination letter (asserting, *inter alia*, that Prime Aid violated provisions governing claims procedures when it failed reverse seven claims) [Doc. # 33-2]. ESI has not sufficiently alleged that Prime Aid's mere failure to reverse claims in the time contemplated by the parties' agreement caused ESI additional damages which can be remedied through its breach of contract claim. ESI similarly fails to allege how it was damaged by Prime Aid's failure to collect copayments or maintain proper records.

However, ESI also alleges that Prime Aid retained payments to which it was not entitled. Prime Aid argues that ESI's allegation must be rejected as conclusory because ESI has not identified a single instance in which Prime Aid retained a payment to which it was not entitled. [Doc. # 93 at 8-9]. The Court finds that ESI states a plausible claim for breach of contract based on its allegation that Prime Aid failed to reverse claims and improperly retained monies it was not entitled to keep.

### C. Count III — Unjust Enrichment

ESI also asserts an alternative counterclaim for unjust enrichment based on Prime Aid's alleged retention of monies for claims that it failed to properly reverse. In Missouri, to plead a cause of action for unjust enrichment, a plaintiff must allege: "(1) a benefit conferred by a plaintiff on a defendant; (2) the defendant's appreciation of the fact of the benefit; and (3) the acceptance and retention of the benefit by the defendant under the circumstances in which retention without payment would be inequitable." Doug Volz v. Provider Plus, Inc., Jeff Serafin, No. 4:15CV0256 TCM, 2015 WL 3621113, at *3 (E.D. Mo. June 9, 2015) (quoting Rental Co., LLC v. Carter Group, Inc., 399 S.W.3d 63, 67 (Mo. Ct. App. 2013)).

12

Because unjust enrichment is "an equitable remedy based on the concept of a quasi-contract," a plaintiff may not "recover under both an express contract and unjust enrichment." Affordable Communities of Missouri v. Fed. Nat. Mortg. Ass'n, 714 F.3d 1069, 1077 (8th Cir. 2013) (quoting Reyner v. Crawford, 334 S.W.3d 168, 174 (Mo. Ct. App. 2011) and Chem Gro of Houghton, Inc. v. Lewis Cnty. Rural Elec. Coop. Ass'n, No. 2:11CV93 JCH, 2012 WL 1025001, at *3 (E.D. Mo. Mar. 26, 2012)). Rather, if a "plaintiff has entered into an express contract for the very subject matter for which he seeks recovery, unjust enrichment does not apply, for the plaintiff's rights are limited to the express terms of the contract." Id. (quoting Howard v. Turnbull, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010)). However, "[t]he fact that a plaintiff cannot simultaneously recover damages for both breach of an express contract and unjust enrichment does not preclude that plaintiff from pleading both theories in [its] complaint." Franke v. Greene, No. 4:11CV1860 JCH, 2012 WL 3156577, at *5 (E.D. Mo. Aug. 2, 2012) (alterations in original) (quoting Owen v. General Motors Corp., No. 06–4067–CV–C–NKL, 2006 WL 2808632, at *2 (W.D. Mo. Sept. 28, 2006)).

Prime Aid argues that ESI's unjust enrichment claim fails because the alleged benefit ESI seeks is governed by an express contract. In support, Prime Aid cites Budach v. NIBCO, Inc., No. 2:14-CV-04324, 2015 WL 3853298, at *8 (W.D. Mo. June 22, 2015) (dismissing unjust enrichment claim based in part on defendant's failure to honor express warranty); Dubinsky v. Mermart LLC, No. 4:08-CV-1806 (CEJ), 2009 WL 1011503, at *5 (E.D. Mo. Apr. 15, 2009), aff'd, 595 F.3d 812 (8th Cir. 2010) (dismissing claim where plaintiffs sought recovery for events arising solely out of parties' contract); and Speaks Family Legacy Chapels, Inc. v. Nat'l

13

Heritage Enterprises, Inc., No. 2:08-CV-04148-NKL, 2009 WL 2391769, at *4 (W.D. Mo. Aug. 3, 2009) (dismissing unjust enrichment claim based on contract payments made to defendants). In each of these cases, the unjust enrichment claim was based upon an express contract. Unlike the cited cases, ESI's unjust enrichment claim does not depend on the existence of the provider agreement.

Prime Aid's motion to dismiss ESI's counterclaim for unjust enrichment will be denied.

\* \* \*

For the foregoing reasons,

**IT IS HEREBY ORDERED** that plaintiff's motion to dismiss defendant's first amended counterclaim [Doc. # 92] is **granted in part and denied in part**.

**IT IS FURTHER ORDERED** that the defendant's counterclaim for fraudulent inducement (Count I) is **dismissed.**

**IT IS FURTHER ORDERED** that the defendant's counterclaim for breach of contract (Count II) is **dismissed with respect to all claims except that Prime Aid failed to reverse claims and retained monies to which it was not entitled.**

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 12th day of May, 2017.