UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

PRIME AID PHARMACY CORP.,  )
 )
    Plaintiff,  )
 )
  vs.  )    Case No. 4:16-CV-1237 (CEJ)
 )
EXPRESS SCRIPTS, INC.,  )
 )
    Defendant.  )

## MEMORANDUM AND ORDER

This matter is before the Court on plaintiff's motion to compel defendant's responses to its second set of requests for production of documents. Defendant has filed a response in opposition and the issues are fully briefed. In addition, defendant has filed a motion for a hearing on the discovery issues. Finally, the Office of the State Comptroller for the State of New Jersey seeks leave to intervene in order to oppose plaintiff's efforts to obtain communications between the Office and defendant. The State Comptroller's motion will be addressed separately. The Court will reserve ruling on plaintiff's motion to compel the production of documents that the State Comptroller claims are protected from disclosure.

### I.    Background

Plaintiff Prime Aid Pharmacy Corp. is a licensed retail and specialty pharmacy located in New Jersey. Defendant Express Scripts, Inc., operates as a pharmacy benefits manager and provides mail order delivery of drugs through its own specialty pharmacy, Accredo Health Group, Inc. On June 25, 2011, plaintiff entered into a Provider Agreement with defendant. Following an audit of plaintiff's records, defendant terminated plaintiff from its provider network, citing plaintiff's alleged

violations of the Provider Agreement. The termination became effective on August 22, 2104. As relevant to the present motion, plaintiff alleges that the true reason for the termination was the defendant's desire to eliminate plaintiff as a competitor to Accredo.

On January 6, 2017, the Court granted plaintiff's motion to compel defendant's responses to plaintiff's first set of requests for production. [Doc. # 59]. On January 20, 2017, plaintiff filed the instant motion to compel defendant's responses to 30 additional requests propounded in its second set of requests for production. Defendant objects, asserting that the disputed requests are irrelevant and overbroad in scope.

## II. Discussion

Under Federal Rule of Civil Procedure 26(b)(1), litigants may obtain

> discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Id. Relevancy in this context "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Jo Ann Howard & Assocs., P.C. v. Cassity, 303 F.R.D. 539, 542 (E.D. Mo. 2014) (citation and quotation omitted). After the proponent of discovery makes a threshold showing of relevance, the party opposing a motion to compel has the burden of showing its objections are valid by providing specific explanations or

2

factual support as to how each discovery request is improper. Id. (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1993), and St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp., 198 F.R.D. 508, 511–12 (N.D. Iowa 2000)). The party must demonstrate to the court "that the requested documents either do not come within the broad scope of relevance defined pursuant to Rule 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." Id. (quoting Burke v. New York City Police Department, 115 F.R.D. 220, 224 (S.D.N.Y. 1987)).

### A. Efforts to Steer Patients to Accredo

According to plaintiff, the following requests seek documents related to defendant's efforts to steer plaintiff's former patients to defendant's pharmacy, Accredo, and the revenue derived from those efforts:

> 10. Any and all documents relating to Express Scripts [members] who filled prescriptions at Prime Aid prior to August 22, 2014.
>
> 17. Documents sufficient to identify the identities of patients transferred to Accredo, that were formerly serviced by Prime Aid, during the . . . years [2011-2016].
>
> 18. Documents sufficient to identify the revenue generated by Express Scripts and Accredo from patients transferred from Prime Aid to Accredo.
>
> 34. Any and all documents sufficient to identify the type and amounts of prescriptions authorized to fill by Express Scripts for patients formerly serviced by Prime Aid after Prime Aid's termination from the . . . Network.
>
> 50. Any and all documents relating to Express Scripts' efforts to transfer Prime Aid's patients to Accredo to fill former Prime Aid patients' prescriptions after August 22, 2014.
>
> The time period for these requests is July 25, 2011 through the present.

[Doc. # 62-1 at p. 6].

3

Defendant contends that these requests are overbroad as to time and has offered to provide documents relating to each interaction it had with members that used plaintiff's services "at or near" the time the provider agreement was terminated. The Court agrees that the request is overbroad and will direct defendant to provide documents responsive to the above requests for all Express Scripts members who filled prescriptions at Prime Aid during the six-month period preceding plaintiff's termination from the provider network through the six-month period after the termination, *i.e.*, February 22, 2014 through February 22, 2015.

### B. Accredo's Operations in New Jersey

In the following requests, plaintiff seeks records reflecting Accredo's participation in the New Jersey specialty pharmacy market before and after plaintiff was terminated from the provider network:

20. Documents sufficient to identify the revenue generated by Accredo for services and prescriptions it provided for patients in New Jersey for the . . . years [2011-2016].

21. Documents sufficient to identify the types of prescriptions filled by Accredo for patients in New Jersey for the . . . years [2011-2016].

32. Documents sufficient to identify the number of patients residing in New Jersey serviced by Accredo for the . . . years [2011-2016].

33. Any and all documents reflecting Accredo's market share in New Jersey for the . . . years [2011-2016].

Defendant argues that information regarding Accredo's prescriptions for New Jersey residents who never filled a prescription at Prime Aid is irrelevant. Plaintiff counters that evidence of an increase in Accredo's business following plaintiff's termination from the provider network is relevant to its claims for breach of contract and fraud and to support its damages claim for lost profits. As a general

4

matter, the requested information is relevant for the stated purposes but plaintiff has made no effort to explain why it needs this information for a five-year period. The Court will limit the time frame of these requests to the six-month period preceding plaintiff's termination from the provider network through the six-month period after the termination, *i.e.*, February 22, 2014 through February 22, 2015.

### C. Express Scripts' Operations in New Jersey

Request 35 seeks:

35. Any and all documents sufficient to identify the type and amounts of prescriptions authorized to fill by Express Scripts for patients residing in New Jersey since August 22, 2014.

Defendant objects that information regarding prescriptions it has filled in New Jersey, regardless of whether the member ever used Prime Aid or Accredo, is not relevant. The Court agrees, and defendant's objection will be sustained.

### D. Express Scripts' Relationships with Insurance Companies

Plaintiff seeks documents regarding defendant's business with health insurers for services that defendant provides in New Jersey:

16. Any and all documents sufficient to identify insurance companies and plans that Express Scripts services in the State of New Jersey including, but not limited to, copies of any agreements and/or contracts between Express Scripts and insurance companies.

19. Documents sufficient to identify the revenue generated by Express Scripts for insurance companies for services it provided for patients in New Jersey for the . . . years [2011-2016].

22. Documents sufficient to identify revenue generated by Express Scripts from insurance companies for which Express Scripts is providing services in New Jersey.

23. Documents sufficient to identify any success fees, bonuses and incentives, received by Express Scripts from insurance companies.

5

24. Any and all contracts between Express Scripts and insurance companies for services in New Jersey.

25. Any and all documents sufficient to identify the compensation structure between Express Scripts and insurance companies for providing services in New Jersey.

Plaintiff argues that the requested documents are relevant to establish that defendant had a motivation for failing to act in good faith and to prove lost-profit damages.[1] The requested information would be relevant to a claim that defendant had an incentive to terminate the provider agreement in order to gain a benefit from the insurance companies with which it contracts. However, plaintiff does not make any allegation to that effect in its pleadings. Therefore, the Court will sustain defendant's objection with respect to these requests.

### E. Investigations of Defendant

Plaintiff seeks documents relating to state and federal investigations into Express Scripts:

51. Any and all documents relating to subpoenas Express Scripts has received from state or federal prosecutors (not including Grand Jury subpoenas).

52. Any and all documents relating to subpoenas Express Scripts has received from state or federal agencies, including, but not limited to agencies' offices of inspectors general.

53. Any and all documents relating to non-privileged communication between Express Scripts and state or federal prosecutors.

54. Any and all documents relating to non-privileged communications between Express Scripts and state or federal agencies, including, but not limited to agencies' offices of inspectors general.

---

[1] The Court previously ruled that documents relating to defendant's decision-making regarding the termination of other network pharmacies was relevant to plaintiff's claim for breach of implied covenant of fair dealing. See Doc. #59 at 4-5. The Court rejects plaintiff's assertion that the same reasoning applies to the documents requested here.

55. Any and all documents reflecting fines paid by Express Scripts to State Boards of Pharmacies, Federal or State Attorneys General and/or the Department of Justice in response to State Board of Pharmacy audits or investigations by any authorities.

Plaintiff first asserts that this information is relevant to its claim for fraudulent misrepresentation. The Court disagrees. Plaintiff's fraud claim is based on defendant's statement that it did not withhold any reimbursement funds due to plaintiff. There is no suggestion that state or federal agencies have investigated defendant for similar misrepresentations.

Plaintiff also asserts that that the requested documents are relevant to its claim for breach of the covenant of good faith and fair dealing. Defendant disagrees, relying on two cases to support its contention that the information plaintiff seeks is irrelevant. The plaintiffs in Distefano v. Law Offices of Barbara H. Katsos, PC, No. CV 11-2893 JS AKT, 2013 WL 1339536, at *7 (E.D.N.Y. Mar. 29, 2013), asserted claims for breach of contract, legal malpractice, and breach of fiduciary duty against their former lawyer. During discovery, plaintiffs sought "any filings with the New York Department of State," arguing that the documents were relevant because "they are suing an entity." In language defendant relies on here, the court declined to order the production of documents beyond defendant's article of incorporation because the plaintiffs failed to explain "how the requested documents relate to the claims or defenses in this case." In Treace v. UNUM Life Ins. Co., No. 03-2409M1V, 2004 WL 3142215, at *1 (W.D. Tenn. Aug. 10, 2004), the plaintiff sued her insurance company after it denied her claim for disability benefits and canceled her policy. She sought documents concerning investigations, evaluations, and claims made in other states concerning the defendant's business practices. The court determined that the plaintiff failed "to carry her burden to show

7

the relevance of these documents" because she did not indicate "the nature of the business practices and activities which were being investigated" or "how the investigation relate[d] to . . . allegations in the complaint." Id. at *6.

Plaintiff here asserts that the requested documents will show that defendant tolerates misconduct from Accredo while using plaintiff's minor breaches of the Provider Agreement as a pretext to terminate plaintiff from the provider network. For example, in 2015, Accredo settled with state and federal authorities over allegations that it participated in a kickback scheme with a pharmaceutical manufacturer under which Accredo received additional patient referrals in exchange for achieving higher refill percentages of particular drugs than other specialty pharmacies. [Doc. # 74-4]. This argument supports plaintiff's request for documents directed to investigations of Accredo (see below), but the requests at issue here are directed to Express Scripts itself. As plaintiff has failed to articulate the relevance of the requested documents to its claims in this case, defendant's objections are sustained.

### F. Fines Paid by Accredo

Plaintiff seeks:

56. Any and all documents reflecting fines paid by Accredo to State Boards of Pharmacies, Federal or State Attorneys General and/or the Department of Justice in response to State Board of Pharmacy audits or investigations by any authorities.

This request seeks information directly relevant to plaintiff's claim and defendant will be directed to produce responsive documents. This ruling does not extend to any communications that the New Jersey Office of State Comptroller asserts are privileged.

### G. Reconciliations

Plaintiff seeks:

15. Any and all documents reflecting accountings or reconciliations provided by Express Scripts for pharmacies other than Prime Aid.

As plaintiff notes, the Court previously found that evidence that defendant subjected plaintiff to more stringent performance standards than less-competitive pharmacies is relevant to plaintiff's claims of fraudulent misrepresentation and breach of the implied contract of good faith and fair dealing. [Doc. # 59 at 4-5]. Here, plaintiff asserts that evidence that defendant provided reconciliations to other pharmacies is similarly relevant to show that Express Scripts treated smaller, noncompetitive pharmacies differently. The Court is not persuaded that disparate treatment with respect to the provision of reconciliations amounts to the imposition of more stringent performance standards on plaintiff. Defendant's objection will be sustained.

### H. Express Scripts' Alleged Damages

Request 46 seeks:

46. Any and all documents reflecting damages sustained by Express Scripts as a result of Prime Aid's alleged failure to timely reverse payments.

Defendant cited plaintiff's alleged failure to timely reverse a small number of reimbursement claims as a reason for its termination from the provider network. Plaintiff argues that the absence of any evidence that defendant sustained damages supports its contention that defendant's stated termination reasons were a pretext for its true purpose, which was to eliminate a competitor to Accredo. The Court

agrees that the requested evidence is relevant and will direct defendant to produce responsive documents.[2]

### I. Documents Express Scripts Denies Exist

29. Copies of any and all recordings of any communications with physicians regarding the termination of Prime Aid.

30. Copies of any and all recordings of any communications with third parties regarding the termination of Prime Aid.

43. Any and all documents relating to Express Scripts' decision to refuse to provide Prime Aid a 90-day notice period and/or hearing following notice to Prime Aid of its termination from the Express Scripts Network in 2014.

47. Any and all documents reflecting instances of Express Scripts terminating, suspending, or modifying Accredo's rights to participate in an Express Scripts Network as a result of Accredo's failure to timely reverse payments.

48. Any and all documents reflecting denials of rights to Accredo to participate in an Express Scripts Network.

49. Any and all documents reflecting denials of rights to Medco Health Systems, Inc. to participate in an Express Scripts Network.

Defendant asserts that it does not have documents responsive to these requests.

"In responding to [Rule 34] discovery requests, a reasonable inquiry must be made, and if no responsive documents or tangible things exist, Fed.R.Civ.P. 26(g)(1), the responding party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence." Heller v. City of Dallas, 303 F.R.D. 466, 485 (N.D. Tex. 2014) (quoting Atcherley v. Clark, No. 1:12cv00225 LJO DLB (PC), 2014 WL 4660842, at *1 (E.D.

---

[2] Indeed, defendant asserts a counterclaim for breach of contract based in part on plaintiff's alleged failure to timely reverse claims.

Cal. Sept. 17, 2014)); see also Catrinar v. Wynnestone Communities Corp., No. 14-11872, 2016 WL 1084687, at *2–3 (E.D. Mich. Mar. 21, 2016) (same); Coppola v. Smith, No. 1:11-CV-1257-AWI-BAM, 2016 WL 726903, at *2 (E.D. Cal. Feb. 23, 2016) (same); EnvTech, Inc. v. Suchard, No. 3:11-CV-00523-HDM, 2013 WL 4899085, at *5 (D. Nev. Sept. 11, 2013) (same). Here, defendant does not state that it undertook a diligent and good faith effort to locate documents responsive to the above requests. Lewton v. Divingnzzo, No. 8:09CV2, 2010 WL 1630719, at *5 (D. Neb. Apr. 21, 2010) (directing party to serve amended responses "indicating (a) whether responsive documents do or do not exist and (b) whether all responsive documents have been produced after a diligent and good faith effort to locate and identify responsive materials."). Defendant must supplement its responses to these document requests.

***

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to compel responses to its second set of requests for production of documents [Doc. # 61] is **granted in part and denied in part**.

**IT IS FURTHER ORDERED** that, **not later than July 25, 2017**, defendant shall produce all documents responsive to plaintiff's second requests for production as set forth above.

**IT IS FURTHER ORDERED** that defendant's motion for hearing [Doc. # 72] is **denied**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 10th day of July, 2017.