UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PRIME AID PHARMACY CORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:16-CV-1237 (CEJ) |
| ) | |
| EXPRESS SCRIPTS, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on plaintiff's motion to compel compliance with a subpoena duces tecum. Non-party Accredo Health Group, Inc. has filed a response in opposition in which it requests an award of attorneys' fees. All issues are fully briefed.

**I.   Background**

Plaintiff Prime Aid Pharmacy Corp. is a New Jersey-based specialty pharmacy. Defendant Express Scripts, Inc. operates as a pharmacy benefits manager and provides mail order delivery of drugs through its own specialty pharmacy, Accredo Health Group, Inc. On June 25, 2011, plaintiff entered into a Provider Agreement with defendant. On August 22, 2014, defendant terminated plaintiff from its provider network, citing plaintiff's alleged violations of the provider agreement. Plaintiff alleges that defendant actually terminated the agreement in order to eliminate plaintiff as a competitor to Accredo. In this action, plaintiff asserts claims of fraudulent misrepresentation; breach of contract; breach of covenant of good faith and fair dealing; violation of the Missouri Prompt Pay Act;

unjust enrichment; promissory estoppel; and equitable accounting. Defendant asserts counterclaims for breach of contract and unjust enrichment.

On December 14, 2016, plaintiff served a subpoena duces tecum on Accredo, propounding 21 requests for documents. On January 10, 2017, Accredo objected to all 21 requests. Counsel for plaintiff and Accredo attempted to resolve their disagreement without success.

## II. Discussion

Under Federal Rule of Civil Procedure 26(b)(1), litigants may obtain

> discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Id. Relevancy in this context "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Jo Ann Howard & Assocs., P.C. v. Cassity, 303 F.R.D. 539, 542 (E.D. Mo. 2014) (citation and quotation omitted). Despite the broad definition of relevance and the policy of favoring liberal discovery, district courts are empowered to limit the scope of allowable discovery if "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Fed.R.Civ.P. 26(b)(2)(C).

A party serving a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed.R.Civ.P. 45(d).

Courts are particularly mindful of Rule 45's undue burden and expense limitations. Wells v. Lamplight Farms Inc., 298 F.R.D. 428, 433 (N.D. Iowa 2014) (citing Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2, 197 F.3d 922, 927 (8th Cir. 1999)). And, if discovery can easily be obtained from a party, it may be inappropriate to demand the same discovery from a nonparty. Id. (citing American Broadcasting Co. v. Aereo, Inc., No. 13–MC–0059, 2013 WL 5276124, at *6 (N.D. Iowa Sept. 17, 2013); Precourt v. Fairbank Reconstruction Corp., 280 F.R.D. 462, 467 (D.S.D. 2011)).

### A.    Accredo's Interactions with Government Entities

Plaintiff seeks documents relating to state and federal investigations into Express Scripts:

16. Any and all non-privileged documents related to subpoenas Accredo has received from state or federal agencies including, but not limited to, agencies' offices of inspectors general, licensing boards, or prosecutors (not including Grand Jury subpoenas).

17. Any and all documents relating to non-privileged communications between Accredo and state or federal prosecutors, agencies, or licensing boards.

18. Any and all documents reflecting fines paid by Accredo to State Boards of Pharmacies, Federal or State Attorneys General and/or the Department of Justice, or other licensing boards or agencies, in response to State Boards of Pharmacy audits or investigations by any authorities.

21. Any and all non-privileged communications between Express Scripts and Accredo relating to penalties imposed by any state or federal agency or licensing board.

The time period for these requests is July 25, 2011, through the present. [Doc. # 66-1 at p. 5].

3

Plaintiff asserts that the requested documents are relevant to its claims for fraudulent misrepresentation. As the Court has previously stated, plaintiff's fraud claim is based on defendant's statement that it did not withhold any reimbursement funds due to plaintiff. The information sought in the above requests is not relevant to this claim.

Plaintiff also asserts that the requested documents are relevant to its claim for breach of the covenant of good faith and fair dealing. Accredo argues that, because defendant stated it was terminating plaintiff for its failure to report a fine it paid to the state of New Jersey, the scope of these requests should be limited to any instances when it also failed to report a disciplinary action.  This is an overly narrow characterization of plaintiff's claim. Plaintiff alleges that defendant tolerates misconduct from Accredo while using plaintiff's minor breaches of the Provider Agreement as a pretext to terminate plaintiff from the provider network. As support, plaintiff cites reports that Accredo paid money to state and federal authorities in settlement of claims that it participated in a kickback scheme to receive additional patient referrals. [Doc. # 81-5]. The documents plaintiff seeks are relevant to its claim.

Accredo objects that the requests are overly broad to the extent that they seek "any and all documents" that reflect or relate to a topic. For example, documents responsive to request 17 would include its response to an agency's request for public comment or routine correspondence regarding renewal of state licenses. [Doc. # 76 at p. 6]. In response, plaintiff informs the Court it is willing to limit the scope of request 17 to government inquiries into Accredo's business practices, as opposed to its responses to requests for public comment or other

4

routine matters. [Doc. # 81 at p.3]. The remaining requests seek documents relating to "subpoenas," "fines," and "penalties," and thus are sufficiently narrow. Accredo's objections are overruled.

### B. Accredo's Operations in New Jersey

In the following requests, plaintiff seeks records reflecting Accredo's participation in the New Jersey specialty pharmacy market before and after plaintiff was terminated from the provider network:

4. Documents sufficient to identify the revenue generated by Accredo for services and prescriptions it provided for patients in New Jersey for the . . . years [2011-2016].

5. Documents sufficient to identify the types of prescriptions filled by Accredo for patients in New Jersey for the . . . years [2011-2016].

10. Documents sufficient to identify the number of patients residing in New Jersey for which Accredo filled prescriptions for the . . . years [2011-2016].

11. Any and all documents sufficient to identify Accredo's market share in New Jersey for the . . . years [2011-2016].

After the instant motion was filed, the Court directed defendant Express Scripts to produce documents responsive to these requests, but for the narrower time frame of "the six-month period preceding plaintiff's termination from the provider network through the six-month period after the terminations, *i.e.*, February 22, 2014 through February 22, 2015." [Doc. # 132 at pp. 3-4]. Accordingly, these requests are moot.

### C. Documents Accredo Denies Exist

1. Documents sufficient to identify all patients, physicians, and third parties notified that Prime Aid was terminated in 2014 from the Express Scripts Network.

5

3. Documents sufficient to identify the revenue generated by Accredo from services and prescriptions it provided for patients in New Jersey for the . . . years [2011-2016].

6. Any and all documents prepared by Accredo, for Accredo, within Accredo, or externally, announcing the termination of Prime Aid from the Express Scripts Network in 2014.

7. Any and all documents reflecting a written script provided to Accredo employees to be followed by such Accredo employees to advise patients, providers, and/or third parties about the termination of Prime Aid from the Express Scripts Network.

8. Copies of any and all recording or any communications with patients, physicians, and/or third parties regarding the termination of Prime Aid.

9. Any and all copies of any electronic communications regarding the termination of Prime Aid from the Express Scripts Network.

12. Any and all business strategy plans involving Accredo and Express Scripts relating to patients, physicians, and geographic areas previously serviced by Prime Aid.

13. Any and all documents reflecting instances of Express Scripts terminating, suspending, or modifying Accredo's rights to participate in an Express Scripts Networks as a result of Accredo's failure to timely reverse payments.

14. Any and all non-privileged documents reflecting denials of rights to Accredo to participate in an Express Scripts network.

15. Any and all documents relating to efforts by Accredo or Express Scripts to transfer Prime Aid's patients to Accredo to fill former Prime Aid patients' prescriptions after August 22, 2014.

Accredo asserts that many of these requests are directed to plaintiff's theory that there was an organized campaign at Accredo to target Prime Aid and its patients. Accredo further asserts that it "is not aware of any responsive documents regarding such a campaign." Prime Aid counters that it is inappropriate for Accredo to limit its responses to the above requests in this manner. The Court agrees, and

to the extent that Accredo relied on this limitation when searching for responsive documents, it is instructed to undertake a new review of its documents.

Plaintiff challenges Accredo's claim that it does not have documents responsive to requests regarding plaintiff's former patients. Plaintiff asserts that under the laws of New Jersey (plaintiff's principal place of business) and Tennessee (Accredo's principal place of business), when a patient is transferred from one pharmacy to another, the receiving pharmacy is required to keep detailed records of the transfer, including information from the previous pharmacy. [Doc. # 66 at pp. 6-7]. Accredo does not directly address this argument,[1] but states that it maintains the requested information in patient files. See Affidavit of Victor Perini (information is not maintained in a central location or indexed by transferring physician or pharmacy). [Doc. # 77 at ¶11]. Accredo suggests that the requested information could be located if plaintiff gave it the name of patients it transferred to Accredo. The Court finds this to be a reasonable resolution of the issue and will direct Accredo to provide the requested information within 15 days of receiving patient names from plaintiff. The Court also agrees with Accredo that information regarding patients who transferred to Accredo before plaintiff's termination is not relevant.

### D. Documents Created by Defendant

19. Any and all communications from Express Scripts to Accredo reflecting requests for additional information from Express Scripts in connection with Accredo's claims for reimbursement.

---

[1] Plaintiff quotes portions of Tennessee's Standards of Practice, Rule 1140-030.03(7)(b) and New Jersey's Administrative Code, § 13:39-7.8. The plain language of the quoted portions refers to transferred "prescriptions," not "patients," and thus would not seem to apply to all instances of a patient ceasing to use one pharmacy and starting at another.

20. Any and all communications from Express Scripts to Accredo regarding denials of Accredo's claims for reimbursement.

21. Any and all non-privileged communications between Express Scripts and Accredo relating to penalties imposed by any state of federal agency, or licensing board.

Accredo objects to producing documents that are equally obtainable from defendant. In response, plaintiff argues that it is justified in seeking these documents from Accredo because defendant has improperly withheld responsive documents. If that is the case, then the plaintiff's remedy is to seek an order compelling defendant to produce the documents.

### E.    Sanctions

Accredo argues that it is entitled to sanctions under Rule 45(d), which provides: "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). "The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply." Id. Because the Court finds that Accredo improperly withheld some responsive documents, no sanctions will be imposed on plaintiff.

* * *

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to compel compliance with subpoena duces tecum [Doc. # 65] is **granted in part and denied in part**.

**IT IS FURTHER ORDERED** that, **not later than August 14, 2017**, Accredo shall produce documents responsive to the subpoena as set forth above,

8

with the exception of information contained within patient files, which shall be produced within 15 days of Accredo receiving patient names from plaintiff.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 24th day of July, 2017.

9